# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH M. GORMAN,<br>**Plaintiff,** | CIVIL ACTION |
| v. | |
| ACTEON NETWORKS, LLC,<br>**Defendant.** | NO. 19-5818 |

DuBOIS, J.                                                              May 26, 2021

## M E M O R A N D U M

## I.    INTRODUCTION

In this employment discrimination case, plaintiff Elizabeth Gorman claims that her former employer, defendant Acteon Networks, LLC ("Acteon"), discriminated against her on the basis of her age and disability—a shoulder injury—and retaliated against her for exercising her rights under the Pennsylvania Workers' Compensation Act. Plaintiff asserts claims of "discriminatory treatment and discharge" under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") (Count I) and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") (Count II), "retaliation-discharge" under Pennsylvania common law (Count III), and improper discontinuation of her medical benefits in violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161, *et seq.* ("COBRA") (Count IV). Presently before the Court is Defendant Acteon Networks, LLC's Motion for Summary Judgment. For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Defendant "sells and installs telecommunications, security equipment, fiber optic cabling, paging systems, and wi-fi networks from its office in Fort Washington, Pennsylvania." Def.'s

---

[1]     The facts are presented in the light most favorable to plaintiff. Disputed facts are noted as such. Where appropriate, plaintiff and defendant's statements of material facts are cited in lieu of a direct citation to the record.

Statement of Undisputed Facts ("Def.'s SUF") ¶ 1. Plaintiff began working for defendant in 2006. Pl.'s Counter-Statement Mat. Facts ("Pl.'s CSMF") ¶ 1. From 2006 to 2018, plaintiff held a position as a sales representative, selling telecommunications equipment. Def.'s SUF ¶ 8. At times, her role required her to visit clients in-person to conduct site surveys. *Id*. ¶ 22. Jack Yoast, President of Acteon, was plaintiff's supervisor. Gorman Dep. 29:21-22.

When she first started at Acteon, plaintiff worked from home, except for visits with clients about two to three times a week. *Id*. 16:18-17:15. Yoast testified that plaintiff was eventually told she could no longer work from home because she "was not hitting her numbers." Yoast Dep. 33:16-20. Plaintiff does not dispute that this privilege was revoked, but testified that there were no "complaints about [her] performance while [she] worked from home." Gorman Dep. 103-25-104:2.

On June 1, 2018, plaintiff and a co-worker visited a client to conduct a site survey and stopped for lunch on their way back to the office. *Id*. 38:2-12. During that stop, plaintiff tripped on a sidewalk curb and fell, injuring her left shoulder and tearing her rotator cuff. *Id*. 36: 24-37:3. Thereafter, plaintiff "worked from home for about three weeks," until Yoast sent her an email "saying that [she] had to come into the office." *Id*. 43:10-13. Due to her injury, plaintiff was unable to drive or open the car door with her left arm so her husband drove her back and forth to work daily through August 15, 2018. *Id*. 43:13-16. On August 16, 2018, plaintiff had surgery on her injured shoulder and began receiving workers' compensation benefits. *Id*. 44:16-19. She then took time off from work to recover. *Id*. 112:18-25. Following her surgery, plaintiff "wore a hard sling for four months" and was still unable to drive or open the car door with her left arm. Pl.'s CSMF ¶ 6.

Plaintiff testified that she called Yoast to discuss taking time off from work to recover from her surgery but he did not answer her calls, so she told the office manager that she was taking time off. Gorman Dep. 112:18-22. Plaintiff and Yoast did not have any communication between the date of her surgery, August 16, 2018, and September 4, 2018. *Id*. 114:17-20. On September 4, 2018, Yoast sent plaintiff an email with the subject line "It's Time," which stated in relevant part:

> Basically, my message is that it's time for you to hang up the receiver on the Dterm V and retire. I want you to go out with dignity and I think this is the best way for you to end your storied career in the telecommunications industry. Although you might not agree, I think it is best for you to concentrate on your recovery and spend time with your family. I am sure you have thought about it, and given the timing of your injury and surgery, the timing could not be better. I have hinted at this in the past but, again, the timing is perfect and I expect that you will tender your retirement letter today.

Pl.'s Ex. 4. Plaintiff did not respond to the email. Gorman Dep. 92:4. On October 18, 2018, plaintiff received a letter from Acteon stating that she had been terminated from her position and that her health insurance would be discontinued on October 31, 2018. *Id*. 95:2-16.

"On February 20, 2020, Acteon offered [p]laintiff reinstatement to her position." Def.'s SUF ¶ 60. Plaintiff declined the offer on the ground that she would have been required to report to someone other than Yoast, the President, and "that would not have been acceptable." Gorman Dep. 96:12-13.

On April 2, 2021, Defendant Acteon Networks, LLC's Motion for Summary Judgment was filed (Document No. 31). Plaintiff, Elizabeth Gorman's Response in Opposition to Defendant's Motion for Summary Judgment was filed on May 5, 2021 (Document No. 40). On May 14, 2021 the Reply Brief in Further Support of Defendant, Acteon Networks, LLC's Motion for Summary Judgment was filed (Document No. 44). The Motion is thus ripe for decision.

3

## III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment[] and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

### A. ADEA and COBRA Claims

Plaintiff asserts claims of "discriminatory treatment and discharge" under the ADEA and improper discontinuation of her medical benefits in violation of COBRA. Compl. ¶¶ 29-43; 62 (Counts I and IV). Defendant seeks summary judgment on both claims on the ground that defendant does not maintain the requisite number of employees to be covered by either statute.

The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b); *Liou v. Le Reve Rittenhouse Spa*, LLC, No. CV 18-5279, 2019 WL 1405846, at *3 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). Similarly, "[e]mployers with fewer than 20 employees are exempt from COBRA's requirements." *Geissal v. Moore Med. Corp.*, 524 U.S. 74, 80 (1998) (citing 29 U.S.C. § 1161(b)).[2] Accordingly, to defeat defendant's Motion on this ground, plaintiff must show that there exists a genuine dispute of material fact as to whether defendant maintained at least 20 employees during the year preceding her termination in September 2018. The Court next addresses that issue.

Defendant argues that "at all times in 2017, 2018, and 2019, Acteon had no more than nineteen (19) employees at any given time." Mot. 7. Defendant supports this argument with the following evidence: (1) tax documents filed in 2017-2018 ("PA Form UC-2A Employer's Quarterly Report of Wages Paid to Each Employee"), Def.'s Ex. 15-17; (2) a payroll register from 2018, Def.'s Ex. 22; and (3) Yoast's deposition testimony, Yoast Dep. 101:9-15. Plaintiff, on the other hand, relies on an allegation in the Complaint—"[d]efendant, upon information and belief, employed 25 or more persons when the unlawful conduct . . . occurred"—Compl. ¶ 7; and her deposition testimony explaining that the 25-person estimate was based on Christmas card lists, an office telephone number list, and personal knowledge; Gorman Dep. 31:3-8. Plaintiff was unable to produce the Christmas card or office telephone number lists as evidence. The Court concludes that plaintiff's remaining evidence on the number of defendant's employees—

---

[2] This exception applies to employers that "normally employed fewer than 20 employees on a typical business day during the preceding calendar year." § 1161(b).

her recollection based on documents she could not produce—is insufficient to create a genuine dispute of material fact in the face of defendant's strong evidence to the contrary.

Although the Court's role at the summary judgment stage is not to make credibility determinations or weigh the evidence, it must "assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986) (Brennan, J., dissenting)). To overcome a motion for summary judgment, the nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex,* 477 U.S. at 325). "Mere conjecture" is insufficient to create a genuine dispute of material fact. *Jenkins v. Anderson*, No. CIV.A. 08-1035, 2009 WL 2870649, at *3 (E.D. Pa. Sept. 3, 2009) (citing *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)).

The Court determines that the evidence with respect to the number of defendant's employees is one-sided in favor of defendant. While defendant has provided official tax documents, payroll records and sworn testimony of Acteon's President—all of which confirms that defendant employed no more than 19 persons during the relevant time period—plaintiff relies solely her own testimony. Additionally, without the lists upon which plaintiff claims to have relied in estimating that defendant employed 25 people, the Court determines that her testimony constitutes "mere conjecture." Based on her testimony alone, the Court concludes that plaintiff has not demonstrated the existence of a genuine dispute of material fact as to the number of employees defendant maintained.

For the foregoing reasons, that part of defendant's Motion which seeks summary judgment on plaintiff's ADEA and COBRA claims (Counts I and IV) is granted.

6

B.  **ADA Claim**

The Court next evaluates plaintiff's claim of "discriminatory treatment and discharge" under the ADA. (Count II) (hereinafter, "discrimination claim"). Because the ADA applies to employers with 15 or more employees, it is undisputed that defendant is covered by the ADA. *See* 42 U.S.C. § 12111.

The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability. *See* 42 U.S.C. § 12112(a). Discrimination claims under the ADA are subject to the three-part burden-shifting framework set out in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. If plaintiff succeeds, the burden shifts to the employer, which must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. Then, the burden shifts back to plaintiff to prove that the employer's proffered reasons are a pretext for discrimination. *Id*. at 804. The "plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The Court evaluates each step in turn.

    i.    *Plaintiff's* prima facie *case*

To establish a *prima facie* case of disability discrimination under the ADA, a "plaintiff must show (1) that she is disabled within the meaning of the ADA, (2) that she is otherwise qualified for the job, with or without reasonable accommodations, and (3) that she was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). "[W]hether a person was a 'qualified individual with a disability'. . . [is examined] from the point at which the alleged discriminatory decision was made." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535-36 (3d Cir. 2007) (citations

7

omitted). Accordingly, the Court evaluates whether plaintiff has established a *prima facie* case of disability discrimination at the time of her termination.

Plaintiff argues that she has established a *prima facie* case of disability discrimination on the grounds that (a) her shoulder injury rendered her disabled under the ADA at the time of her termination, (b) she was qualified for her position as a salesperson and could have performed the job with or without an accommodation, and (c) she was terminated because of her disability. For the following reasons, the Court determines that plaintiff has presented sufficient evidence to establish a *prima facie* case of disability discrimination.

        a.        Disabled

To be considered "disabled" under the ADA, a plaintiff must show that (1) she has a physical or mental impairment that substantially limits one or more of her major life activities, (2) she has a record of such an impairment, or (3) she is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Plaintiff argues that she was disabled under the ADA under the first prong of this definition. The Court thus evaluates whether plaintiff's injury substantially limited one or more of her major life activities.

Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102. During her deposition, plaintiff explained that she could not drive herself to work because she could not drive or open the car door with her left arm. Gorman Dep. 61:16-24. In addition, plaintiff filed a certification, stating that after her surgery, she wore a hard sling, which "completely immobilized [her] left arm and left [her] unable to perform any manual task with it," and even after the hard sling was removed, "it took months of physical therapy for [her]

8

to be able to lift, push, pull, and reach out like normal." Pl.'s Cert. ¶¶ 11-12. Other courts have determined that shoulder injuries like plaintiff's qualify as disabilities under the ADA. *See, e.g., Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 591 (5th Cir. 2016). Additionally, plaintiff's testimony provides a sufficient basis upon which a jury could reasonably conclude that she was substantially limited in performing several major life activities. Accordingly, the Court concludes that plaintiff has sufficiently demonstrated that she was disabled under the ADA, and satisfied the first element of a *prima facie* case.

      b.      Qualified

The next step in establishing a *prima facie* case of disability discrimination requires plaintiff to show that she was qualified to perform her job at the time of her termination. To make that showing, plaintiff must first establish that she possessed the skill, experience or education necessary to adequately perform the job. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001). Second, plaintiff must establish that she was capable of performing the essential elements of the position with or without reasonable accommodation. *Id*. Defendant argues that plaintiff was not qualified for her position on the ground that she could not satisfy the second step. Thus, the Court focuses its inquiry on whether plaintiff has shown that she could perform the essential elements of her position with or without an accommodation.

Plaintiff does not argue that she could have performed the essential functions of her role without an accommodation. Rather, she contends that she could have performed the essential functions of her job with reasonable accommodations—working from home and having a co-worker drive her to customer sites. In its Motion, defendant argues that (1) plaintiff never requested those accommodations, and (2) even if she had, the request to have a co-worker drive

9

her to customer sites was unreasonable. The Court evaluates each of defendant's arguments in turn and concludes that both present genuine disputes of material fact.

Defendant contends that plaintiff did not notify it of her need for an accommodation in violation of the general rule that "it is the responsibility of the individual with a disability to inform the employer than an accommodation is needed." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). However, an exception to this rule applies "where the disability is obvious or otherwise known to the employer without notice from the employee." *Felix v. New York City Transit Authority*, 154 F.Supp.2d 640 (S.D.N.Y. 2001). Plaintiff does not argue that this exception applies in this case, but the Court notes that it likely applies, given that plaintiff sustained her injury while performing her job for defendant and defendant was aware of the timing of her surgery. Nevertheless, in response to defendant's argument that she failed to notify it of her need for an accommodation, plaintiff sufficiently demonstrates the existence of a genuine dispute of material fact.

Plaintiff testified that, after her injury and prior to her surgery, she spoke to Yoast about working from home post-surgery, but he told her "[i]f [she] couldn't come in, then [she] wouldn't have a job." Gorman Dep. 107:4-9. She also testified that, after her surgery, she tried to reach Yoast, but that he would not return her calls, so she told the office manager that she was taking some time off. *Id*. 112:18-22. Yoast, on the other hand, testified that plaintiff never reached out and "fell off the face of the earth" after her injury. Yoast Dep. 71:1-5. In light of these conflicting testimonies, the Court determines that there exists a genuine dispute of material fact with respect to defendant's first argument—whether plaintiff requested an accommodation.

Defendant's second argument—having a co-worker drive her to visit customers would have been unreasonable—also presents a genuine dispute of material fact. The reasonableness of

a proposed accommodation is evaluated through a cost-benefit analysis. Specifically, plaintiff must identify "an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 670 (3d Cir. 1999). "Summary judgment may be granted for a defendant only 'in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.'" *Skerski v. Time Warner Cable Co., a Div. of Time Warner Ent. Co., L.P.*, 257 F.3d 273, 284 (3d Cir. 2001) (citations omitted).

Defendant contends that plaintiff's request to have a co-worker drive her to customer visits was unreasonable on the ground that Acteon was a small company and could not spare one of its employees to complete that task. Reply at 5. However, this argument does not account for the fact that plaintiff's injury occurred on a client visit to which she had been driven by a co-worker. *See supra*, Part II; Gorman Dep. 38:2-5. Additionally, defendant's bare contention that plaintiff's proposed accommodation was unreasonable is insufficient to demonstrate that it would have been "outlandishly costly" or "ineffective." Thus, on the present state of the record, the Court concludes that plaintiff has demonstrated the existence of genuine disputes of material fact with respect to whether she was qualified to perform her role with a reasonable accommodation in satisfaction of the second element of her *prima facie* case.

        c.        Causal Nexus

Finally, to establish a *prima facie* case of disability discrimination, plaintiff must show a causal nexus between her disability and her termination. *See, e.g., New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) ("[T]o make out a claim under the ADA, the plaintiff need only show that intentional discrimination was the but for cause of the allegedly discriminatory action."). The United States Court of Appeals for the Third Circuit has held that "unduly suggestive" temporal proximity may give rise to an inference of causation. *See*

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). However, standing alone, a temporal gap of one month or greater does not sufficiently demonstrate causation. *See Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016) (citing *Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003)).

In this case, plaintiff has sufficiently shown causation by presenting evidence of defendant's stated reasons for terminating her, in addition to temporal proximity. On September 4, 2018, Yoast sent plaintiff a termination email, stating, *inter alia*, "I think it is best for you to concentrate on your recovery and spend time with your family . . . . given the timing of your injury and surgery, the timing could not be better." This evidence, combined with the three-month gap between plaintiff's injury and her termination, is sufficient to support a jury conclusion that plaintiff was terminated because of her injury. Plaintiff has thus presented sufficient evidence of causation in satisfaction of the third element of her *prima facie* case.

For the foregoing reasons, the Court concludes that a jury could reasonably conclude that plaintiff established a *prima facie* case of disability discrimination.

        ii.        *Defendant's Proffered Non-Discriminatory Reasons*

Under the second step of the *McDonnell Douglas* framework, the Court must determine whether defendant has articulated a legitimate non-discriminatory reason for terminating plaintiff. In its Motion, defendant states, "[p]laintiff was terminated for poor sales performance, which had been steadily declining for some time and communicated to [p]laintiff." Mot. 21. Specifically, according to defendant, "[p]laintiff's sales had declined to approximately just $150,000 on an annualized basis, and it is undisputed that leading up to her termination, Plaintiff was failing to cover the cost of her annual salary and fringe benefits from Acteon." *Id*. Defendant supports this contention with reports on plaintiff's sales performance during the

relevant period and Yoast's testimony. Def.'s Ex. 20; Def.'s Ex. 21; Yoast Dep. 69:4-19. Based on this evidence, the Court concludes that defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff in satisfaction of the second step of the *McDonnell Douglas* framework.

        iii.       Plaintiff's Evidence of Pretext

Under the third and final step of the *McDonnell Douglas* framework, the burden shifts back to plaintiff to show that defendant's articulated reason is a pretext for discrimination. To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). In other words, plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

In this case, plaintiff presents sufficient evidence from which a factfinder could reasonably disbelieve defendant's explanation that she was terminated for poor performance. First, she contends that the evidence of her job performance that defendant relies on "was incomplete, as it was halfway through the year and [p]laintiff had multiple projects in the pipeline." Pl.'s Opp. 10. Second, she discredits Yoast's deposition testimony that she was terminated for poor performance on the ground that his termination email did not mention performance and focused solely on the timing of her injury and recovery. Finally, plaintiff claims that she "was offered reinstatement, which again is illogical to offer someone who was

13

performing poorly to the point of getting fired." *Id*. at 11. Based on all of this evidence, the Court concludes that a reasonable factfinder could conclude that defendant's proffered reasons for terminating plaintiff are unworthy of credence. Plaintiff has thus satisfied the third and final step of the *McDonnell Douglas* framework.

Accordingly, the Court denies defendant's Motion to the extent it seeks summary judgment on plaintiff's disability discrimination claim under the ADA.

### C. Common Law Retaliation Claim

Plaintiff's final claim against defendant arises under the Pennsylvania Workers' Compensation Act and common law. She asserts that she was terminated in retaliation for "pursuing her rights under the Pennsylvania Workers' Compensation Act." Compl. ¶ 57. In *Shick v. Shirey*, the Pennsylvania Supreme Court recognized this cause of action by carving out an exception to Pennsylvania's at-will employment policy. 552 Pa. 590 (Pa. 1998). The *Shick* court held, "[t]he Workers' Compensation Act does provide a basis for our finding that termination of an at-will employee for filing a workers' compensation claim violates public policy." *Id*. at 603.

Like ADA claims, workers' compensation retaliation claims are analyzed under the *McDonnell Douglas* burden shifting framework. *See Kieffer v. CPR Restoration & Cleaning Serv.*, LLC, 200 F. Supp. 3d 520, 539 (E.D. Pa. Aug. 3, 2016); *Smith v. R.R. Donnelley & Sons Co.*, Civil Action No. 10-1417, 2011 WL 4346340, at *4, 2011 U.S. Dist. LEXIS 105347 at * 9 (E.D. Pa. Sept. 16, 2011). To establish a *prima facie* case of retaliation, plaintiff must prove that (1) she engaged in a protected activity under the Workers' Compensation Act; (2) she suffered an adverse employment; and (3) there exists a causal connection between the protected activity and the adverse action. *Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632,

14

638 (3d Cir. 2018). Once plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a non-retaliatory reason for termination. Finally, plaintiff bears the burden of showing that that reason is a pretext for retaliation. In resolving defendant's Motion, the Court evaluates each step in turn.

    *i.*  *Plaintiff's* Prima Facie *Case*

The first and second prongs of plaintiff's *prima facie* case have been satisfied in this case—she filed a workers' compensation claim, and she was subsequently terminated. Thus, the Court focuses its analysis on whether plaintiff has sufficiently demonstrated causation. To show causation in support of her retaliation claim, plaintiff presents the same evidence as in her ADA claim—Yoast's termination email and temporal proximity. For the following reasons, the Court concludes that, although this evidence of causation is not as compelling in the retaliation context as in the disability discrimination context, it is sufficient to defeat defendant's Motion.

As an initial matter, the facts underlying plaintiff's retaliation claim overlap significantly with those supporting her discrimination claim. Given the genuine disputes of material fact that the Court has identified *supra* in connection with her discrimination claim, a jury could reasonably conclude that plaintiff's disability and her decision to file for workers' compensation were both motivating factors in defendant's decision to terminate her.

In addition, plaintiff's temporal proximity evidence provides more compelling support for her retaliation claim than it does for her discrimination claim. Plaintiff began receiving workers' compensation benefits just under three weeks before she was terminated (compare with the three-month gap between her injury and her termination). This length of time is within the realm of what courts have deemed "unduly suggestive." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012). Although it is not conclusive evidence of causation, temporal

15

proximity, combined with the close relationship between plaintiff's disability and her filing for workers' compensation, is sufficient to create a genuine dispute of material fact as to the cause of her termination.

The Court notes that plaintiff's argument that Yoast's termination email demonstrates causation is not as compelling in the retaliation context as it is in the discrimination context. First, Yoast said nothing about workers' compensation benefits in the email. Additionally, plaintiff admits that Yoast encouraged her to apply for workers' compensation benefits in the first place and that he and other employees of defendant helped her submit her application. Def.'s SUF ¶ 41; Gorman Dep. 43:23-44:5. This email, standing alone, is insufficient evidence that plaintiff was terminated because she engaged in a protected activity under the Workers' Compensation Act. However, given the factual link between her disability and her decision to apply for workers' compensation, and the three week-gap between her filing for workers' compensation benefits and her termination, the Court determines that plaintiff has presented sufficient evidence of causation.

Accordingly, the Court concludes that a jury could reasonably conclude that plaintiff has presented a *prima facie* case of retaliation, and next evaluates defendant's proffered non-retaliatory reason and plaintiff's evidence of pretext.

      *ii.*    *Defendant's Non-Retaliatory Reason and Plaintiff's Evidence of Pretext*

In moving for summary judgment on plaintiff's retaliation claim, defendant reasserts the same legitimate reason it provides in response to her ADA claim—poor performance—and plaintiff again argues that Yoast's termination email demonstrates that reason is pretextual. As stated *supra*, the email is not direct evidence that defendant terminated plaintiff because she filed a workers' compensation claim. However, it does support plaintiff's argument that her

16

disability, and subsequent receipt of workers' compensation, were factors in the decision. Additionally, given the significant factual overlap between plaintiff's discrimination and retaliation claims, the genuine disputes of material fact that underpin her discrimination claim will also impact the outcome of her retaliation claim. Accordingly, the Court determines that both claims present genuine disputes of material fact and should be submitted to a jury.

To the extent that defendant's Motion seeks summary judgment on plaintiff's common law retaliation claim, the Motion is denied.

## V. CONCLUSION

For the foregoing reasons, Defendant Acteon Networks, LLC's Motion for Summary Judgment is granted in part and denied in part. The Motion is granted to the extent it seeks summary judgment with respect to plaintiff's claims under the ADEA and COBRA. The Motion is denied to the extent it seeks summary judgment with respect to plaintiff's disability discrimination claim under the ADA and retaliation claim under Pennsylvania common law. An appropriate order follows.